UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| GENERAL STAR INDEMNITY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 3:21-CV-206-CHB |
| v. | ) | |
| | ) | |
| LOUISVILLE AREA GOVERNMENTAL SELF | ) | *ELECTRONICALLY FILED* |
| INSURANCE TRUST, LOUISVILLE | ) | |
| JEFFERSON COUNTY METRO | ) | |
| GOVERNMENT, CITY OF LOUISVILLE, | ) | |
| MARK HANDY, JAMES CLARK, KELLY | ) | |
| JONES, ROBERT L. ENNIS, CHARLES | ) | |
| EDELEN, JIM WOOSLEY, JAMES W. | ) | |
| GRIFFITHS, JEFFREY DEWAYNE CLARK, | ) | |
| and GARR KEITH HARDIN | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff General Star Indemnity Company ("General Star"), for its Complaint for

Declaratory Judgment against Defendants Louisville Area Governmental Self Insurance Trust

("LAGIT"), Louisville Jefferson County Metro Government ("Metro"), City of Louisville

("City"), Mark Handy ("Handy"), James Clark ("James Clark"), Kelly Jones ("Jones"), Robert

L. Ennis ("Ennis"), Charles Edelen ("Edelen"), Jim Woosley ("Woosley"), James W. Griffiths

("Griffiths"), Jeffrey Dewayne Clark ("Jeffrey Clark") and Garr Keith Hardin ("Hardin") alleges

on knowledge, information and belief as follows:

## NATURE OF ACTION

1.      General Star brings this action to obtain a judicial determination and declaration

as to the parties' rights and obligations under Special Excess Liability Policy No. IXG 358532

issued by General Star to LAGIT for the policy period of July 1, 1998 to July 1, 2000 ("Policy").

*See* Policy, Declarations, Items 1 & 2, as amended by General Change Endorsement No. 2.
Exhibit A is a copy of the Policy, without the application.

2.      General Star seeks a declaratory judgment that the Policy does not provide
defense or indemnity coverage for a lawsuit brought by Jeffrey Clark and Hardin, styled *Clark,
et al. v. Louisville Jefferson County Metro Government, et al.*, No. 3:17-cv-00419-JRW-CHL
(W.D. Ky.) ("*Clark & Hardin* Action").  The *Clark & Hardin* Action is pending against Handy,
James Clark, Jones, Ennis, Edelen, Woosley and Griffiths, who allegedly are current or former
police officials employed by Metro or the City.  Exhibits B and C are copies of Jeffrey Clark's
and Hardin's respective operative complaints in the *Clark & Hardin* Action.

3.      General Star seeks a declaration that there is no coverage for the *Clark & Hardin*
Action because no covered **bodily injury**, **personal injury**, or **wrongful act** occurred or took
place during the July 1, 1998 to July 1, 2000 policy period.[1]  If the General Star Policy is
triggered, General Star also seeks a declaration that coverage is barred or limited on other
grounds.

## PARTIES

4.      General Star is a corporation organized and existing under the laws of the State of
Delaware, with its principal place of business in the State of Connecticut.  General Star thus is a
citizen of Delaware and Connecticut.

5.      General Star legally transacts insurance business in the Commonwealth of
Kentucky and within the geographical jurisdiction of this Court.

6.      Defendant LAGIT is a liability self-insurance group, established under an
interlocal cooperation agreement pursuant to KRS § 304.48 *et seq.*, that operates as an insurance

---

[1] Terms appearing in bold print are defined terms in the Policy.

trust.  LAGIT is organized and existing under the laws of the Commonwealth of Kentucky, with its principal place of business also located in the Commonwealth of Kentucky.  LAGIT thus is a citizen of the Commonwealth of Kentucky.  LAGIT is also the **Named Insured** under the Policy.

7.    Defendant Metro, a member of LAGIT, is a political subdivision and municipal entity in the Commonwealth of Kentucky, and it is incorporated under Kentucky law.  Metro is thus a citizen of the Commonwealth of Kentucky.  Metro is named as a defendant in the *Clark & Hardin* Action, and it has contractual rights and obligations under the General Star Policy.

8.    Defendant City was a political subdivision in Jefferson County, Kentucky, incorporated under Kentucky law, and the City's successor is Metro.   The City thus was and is a citizen of the Commonwealth of Kentucky. The City is named as a defendant in the *Clark & Hardin* Action, and it may have contractual rights and obligations under the General Star Policy.

9.    Defendant Handy is, on information and belief, an individual who is a citizen of the Commonwealth of Kentucky.  Handy is named as a defendant in the *Clark & Hardin* Action.

10.    Defendant James Clark is, on information and belief, an individual who is a citizen of the Commonwealth of Kentucky.  James Clark is named as a defendant in the *Clark & Hardin* Action.

11.    Defendant Jones is, on information and belief, an individual who is a citizen of the Commonwealth of Kentucky.  Jones is named as a defendant in the *Clark & Hardin* Action.

12.    Defendant Ennis is, on information and belief, an individual who is a citizen of the Commonwealth of Kentucky.  Ennis is named as a defendant in the *Clark & Hardin* Action.

13.    Defendant Edelen is, on information and belief, an individual who is a citizen of the Commonwealth of Kentucky.  Edelen is named as a defendant in the *Clark & Hardin* Action.

14.     Defendant Woolsey, on information and belief, is an individual who is a citizen of the Commonwealth of Kentucky.  Woolsey is named as a defendant in the *Clark & Hardin* Action.

15.     Defendant Griffiths, on information and belief, is an individual who is a citizen of the Commonwealth of Kentucky.  Griffiths is named as a defendant in the *Clark & Hardin* Action.

16.     Defendant Jeffrey Clark, on information and belief, is an individual who is a citizen of the Commonwealth of Kentucky.  Jeffrey Clark is a plaintiff in the *Clark & Hardin* Action, and he is named solely to the extent that he may be a necessary party.  General Star seeks no separate relief against Jeffrey Clark.  General Star has named him only so that he will be bound by the outcome of this lawsuit.

17.     Defendant Hardin, on information and belief, is an individual who is a citizen of the Commonwealth of Kentucky.  Hardin is a plaintiff in the *Clark & Hardin* Action, and he is named solely to the extent that he may be a necessary party.  General Star seeks no separate relief against Hardin.  General Star has named him only so that he will be bound by the outcome of this lawsuit.

## JURISDICTION AND VENUE

18.     This is an action for declaratory relief under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure, to determine a question of actual controversy between the parties.

19.     The action is ripe for adjudication.

20.     An actual and justiciable controversy has arisen and now exists relating to the parties' respective rights, duties and obligations under the Policy.

21.     The Court has jurisdiction over the action under 28 U.S.C. § 1332.  There is complete diversity of citizenship between General Star, on the one hand, and the defendants, on the other hand, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

22.     Venue is proper in this Court under 28 U.S.C. § 1391.  General Star issued the Policy to LAGIT in this Division.  A substantial part of the events or omissions giving rise to the claim at issue occurred in this Division, and the *Clark & Hardin* Action is pending in this Division.

## FACTUAL ALLEGATIONS

### The *Clark & Hardin* Action

23.     This insurance coverage dispute arises out of allegations in the underlying *Clark & Hardin* Action that Jeffrey Clark and Hardin were wrongfully arrested in 1992 and convicted in 1995 as a result of misconduct purportedly committed by the defendants in the *Clark & Hardin* Action—years before the inception of the General Star Policy.  *See generally Clark & Hardin* Action Complaints (Exs. B and C).

24.     According to the *Clark & Hardin* Action, the body of Rhonda Sue Warford was found stabbed to death in April 1992.  *See Clark* Action Complaint ¶ 40 (Ex. B); *Hardin* Action Complaint ¶ 40 (Ex. C).

25.     The Warford murder investigation began in 1992.  *See Clark* Action Complaint ¶¶ 97, 156, 158 (Ex. B); *Hardin* Action Complaint ¶¶ 97, 156, 158 (Ex. C).

26.     Jeffrey Clark and Hardin were indicted in May 1993.  *See Clark* Action Complaint ¶ 121 (Ex. B); *Hardin* Action Complaint ¶ 121 (Ex. C).

27.     The trial of Jeffrey Clark and Hardin began in February 1995.  *See Clark* Action Complaint ¶ 121 (Ex. B); *Hardin* Action Complaint ¶ 121 (Ex. C).

28.     A criminal judgment was entered against Jeffrey Clark and Hardin in May 1995. *See Clark* Action Complaint ¶ 124 (Ex. B); *Hardin* Action Complaint ¶ 124 (Ex. C).

29.     Based on these and other allegations, Jeffrey Clark and Hardin assert causes of action against Metro, the City, Handy, James Clark, Jones, Ennis, Edelin, Woolsey and Griffiths for multiple alleged violations of 42 U.S.C. § 1983 for due process (Count I), fabrication of false evidence (Count II), malicious prosecution (Count III), supervisory liability (Count IV), failure to intervene (Count V), conspiracy (Count VI), Monell claim (Count VII) and state law causes of action for negligent supervision (Count IX), respondeat superior (Count X), malicious prosecution (Count XI), intentional or reckless infliction of emotional distress (Count XII), negligent infliction of emotional distress (Count XIII).

30.     The *Clark & Hardin* Action seeks relief in the form of an unspecified amount of compensatory damages, attorneys' fees and costs, and an unspecified amount of punitive damages.  *See Clark* Action Complaint, Prayer for Relief (Ex. B); *Hardin* Action Complaint, Prayer for Relief (Ex. C).

**The Policy**

31.     General Star issued the Policy to LAGIT for the policy period of July 1, 1998 to July 1, 2000.  Policy, Declarations, Items 1 & 2, as amended by General Star Change Endorsement No. 2 (Ex. A).

32.     The Policy has an $18 million **per occurrence** and **wrongful act** limit of liability, which applies separately to each consecutive annual period.  Policy, Declarations, Item 3.A and Section III.F (Ex. A).  The **per occurrence** and **wrongful act** limit of liability is subject to an $18 million aggregate limit of liability, which has been reduced by other loss payments by General Star.  *Id.*

33.     The Policy also is subject to a $2 million **retained limit** paid by LAGIT for any

one **occurrence of wrongful act** or series of continuous, repeated, or related **occurrences** or

**wrongful acts**, and another $300,000 self-insured retention paid by City/Metro, for a total

retention of $2.3 million.  Policy, Declarations, Item 3.B, as amended by Endorsement No. 7

(Ex. A).

34.     The Policy states that General Star's

> duty to pay any sums that **you** become legally obligated to pay arises only after
> there has been a complete expenditure of your **retained limit** by means of
> payments for judgments, settlements, or defense costs.  We will then be liable
> only for that portion of damages in excess of your retained limit up to our Limits
> of Insurance.

*Id.*, Section III.B.

35.     The Policy also states that General Star's

> liability for any portion of **ultimate net loss** shall not apply until **you** shall be
> obligated to actually pay the full and complete amount of the **retained limit**.
> When **ultimate net loss** has been finally determined, we shall indemnify you for
> the part of such **ultimate net loss** which is in excess of the **retained limit**, or we
> will, upon receiving written request from **you**, make such payment to the claimant
> on your behalf.

*Id.*, Section VI.T (as amended by Endorsement No. 2).

36.     Subject to all of its terms, the Policy provides that General Star will:

> indemnify the Louisville Area Governmental Self Insurance Trust (LAGIT) for
> the **ultimate net loss** in excess of the **retained limit**, to which this insurance
> applies, that LAGIT becomes contractually obligated to indemnify an **insured
> member** for:
>
> 1.  the **insured member's** legal obligation to compensate others; or
>
> 2.  the **insured member's** legal obligation to indemnify a **protected
>     person**;
>
> because of **bodily injury**, **property damage**, **personal injury**, or **advertising
> injury** arising out of an **occurrence** or for loss arising out of a **wrongful act** that

7

takes places during the Policy Period.

Policy, Section I.A, as amended by Endorsement No. 2 (Ex. A).

37.     The Policy states that the "**Named Insured** under this policy is the Louisville

Area Governmental Self Insurance Trust (LAGIT)." *Id.* Section IV.A (as amended by

Endorsement No. 2).

38.     The Policy states that

> **Insured member** means any governmental entity which is a member of the
> Louisville Area Governmental Self Insurance Trust (LAGIT) whom you agree to
> indemnify for **claims** for **bodily in-jury**, **property damage**, **personal injury** or
> **advertising injury** arising out of an **occurrence** for loss arising out of a
> **wrongful act**.

*Id.*, Section IV.B.

39.     The City, now known as Metro, is an **insured member**. *See* Endorsement No. 7.

40.     The Policy includes no duty to defend until the **retained limit** has been exhausted

by payment of a judgment, settlement, or defense costs. *See* Policy, Section I.B.1 and 3 and

Section VI.J.2 (Ex. A).

41.     The Policy also provides that

> All **occurrences** arising out of continuous, repeated, or related **occurrences** shall
> be treated as one **occurrence**.  All **wrongful acts** arising out of continuous,
> repeated, or related **wrongful acts** shall be treated as one **wrongful act**.  The
> Limits of Insurance in effect when the first claim is made and reported to **us** shall
> apply.

Policy, Section III.D (Ex. A); *see also* Declarations, Item 3.A.2. (stating that a single limit

applies to "[a]ny one **occurrence** or **wrongful act** or series of continuous, repeated, or related

**occurrences** or **wrongful acts**.").

42.     The Policy defines **occurrence** as

> an accident, including continuous, repeated, or related exposure to substantially
> the same general harmful conditions which results in **bodily injury** or **property**

**damage**, neither expected nor intended from the standpoint of the insured. **Occurrence** also means an offense arising out of **your** business that results in **advertising injury** or **personal injury**.

Policy, Section II.O (Ex. A).

43.     The Policy defines **wrongful act** as:

Any actual or alleged negligent act, error or omission, including but not limited to those constituted by:

> 1.   Any violation of any federal, state or local civil rights;
>
> 2.   Any negligent ministerial act;
>
> 3.   Any faulty preparation or approval of amps, plans, reports, surveys, designs, bid documents, or specifications only for services provided by any insured for another insured; or
>
> 4.   **Employment practice liability**;

by **you** while acting within the scope of **your** duties as a public official for any insured.

Policy, Section II.Z (Ex. A).

44.     The Policy defines **bodily injury** to mean "bodily harm, sickness or disease, including death, shock, fright, mental anguish, mental injury, or disability resulting therefrom and also includes care and loss of services by any person or persons."  Policy, Section II.C (Ex. A).

45.     The Policy defines **personal injury** as

injury, other than **bodily injury**, arising out of one or more of the following offenses:

> 1.   False arrest, detention or imprisonment;
>
> 2.   Malicious prosecution;
>
> 3.   Oral or written publication of material that slanders or libels a person or organization, or disparages a person's or organization's goods,

products, or services;

4. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premise that a person occupies if done by or on behalf of its owner, landlord or lessor.

5. Violation of an individual's right to privacy;

6. Assault and battery; or

7. Discrimination, except for **employment practices liability** as provided by this Policy, but not intentionally committed by **you** or at **your** discretion.

Policy, Section II.Q (Ex. A).

**The LAGIT Contracts**

46.     LAGIT issued to the City of Louisville (now Metro) Contract No. LOU-01-98 for the fiscal and coverage period July 1, 1998 to July 1, 1999 ("LAGIT 1998-99 Contract"), and Contract No. LOU-01-99 for the fiscal and coverage period July 1, 1999 to July 1, 2000 ("LAGIT 1999-00 Contract").

47.     The LAGIT 1998-99 Contract has a limit of liability between $5 million to $20 million, the latter of which is subject to a July 1, 1998 retroactive date, which is defined by LAGIT to mean "the time and date from which liability exists resulting from an Occurrence for which coverage is provided under this Coverage Contract."

48.     The LAGIT 1999-00 Contract has a limit of liability between $5 million to $20 million, the latter of which is subject to a July 1, 1998 retroactive date, which is defined by LAGIT to mean "the time and date from which liability exists resulting from an Occurrence for which coverage is provided under this Coverage Contract."

49.     The LAGIT 1998-99 and 1999-00 Contracts afford specified coverage for "Bodily Injury," "Personal Injury" and "Public Official Liability" during the "Coverage Period" arising out of an "Occurrence" during the "Coverage Period."

**The Coverage Dispute**

50.     In 2017, LAGIT provided notice to General Star of the complaint filed in the *Clark & Hardin* Action.

51.     In letters dated August 24, 2017, September 18, 2017, April 21, 2020, and August 24, 2020, General Star advised LAGIT that there was no coverage for the *Clark & Hardin* Action under the Policy based on the Policy's insuring agreements and the definitions of **personal injury**, **bodily injury**, **occurrence**, and **wrongful act**.  General Star explained that, because the acts that were allegedly committed against Clark and Hardin that led to their subsequent conviction and incarceration took place before the inception of the Policy, there appeared to be no **bodily injury**, **personal injury** or **wrongful acts** that occurred during the July 1, 1998 to July 1, 2000 policy period.  General Star reserved its rights, including the right to deny coverage on this and other grounds.

52.     Years later, in a March 19, 2021 letter, LAGIT tendered a demand to General Star, asserting for the first time that the Policy affords coverage for the *Clark & Hardin* Action.

53.     General Star advised LAGIT that there is no current duty to defend or to indemnify in connection with the *Clark & Hardin* Action in a letter dated April 1, 2021.  Besides the issues discussed above, coverage may be barred or limited based on other grounds, including, but not limited to, application of Sections II.O., II.U, III.B., III. C., III.D., V.A.1., V.A.16, V.A.18, and VI.J of the General Star Policy, and the applicable terms of the 1998-99 and 1999-00 LAGIT Contracts, as explained in General Star's coverage letters to LAGIT.

## COUNT I

### For a declaration that there is no coverage for the *Clark & Hardin* Action because no injury was committed during the policy period

54.     General Star re-alleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

55.     As explained above, the General Star Policy states that General Star may have an indemnity obligation only if "LAGIT becomes contractually obligated to indemnify an insured member."  Policy, Section I.A, as amended by Endorsement No. 2 (Ex. A).  LAGIT does not have a contractual obligation to indemnify up to its $20 million limit of liability for the *Clark & Hardin* Action under either the LAGIT 1998-99 or LAGIT 1999-00 Contracts.  Among other reasons, the LAGIT 1998-99 or LAGIT 1999-00 Contracts are subject to July 1, 1998 retroactive dates and do not involve covered "Bodily Injury," "Personal Injury" or "Public Official's Liability" during the "Coverage Period" under those Contracts.  As a result, LAGIT has no contractual obligation to indemnify Metro under the LAGIT 1998-99 or LAGIT 1999-00 Contracts for an amount above its retention under the General Star Policy.

56.     As explained above, the General Star Policy requires that **bodily injury**, **personal injury**, **advertising injury**, or **property damage** must occur during this policy period to trigger coverage under the Policy.  Policy, Section I.A, as amended by Endorsement No. 2 (Ex. A).  The Policy's relevant policy period is July 1, 1998 to July 1, 2000.  *Id.*, Declarations, Item 2, as amended by General Star Change Endorsement No. 2.

57.     The allegedly wrongful investigation of Jeffrey Clark and Hardin began in 1992; they were indicted in 1993; and their allegedly improper trial began in February 1995, resulting in a criminal judgment against them in May 1995.  The *Clark & Hardin* Action contends that, as

a result of the underlying defendants' misconduct, Jeffrey Clark and Garr Hardin were maliciously prosecuted and convicted of murder after the jury found them guilty in 1995.

58.     Under the Policy, any alleged **bodily injuries**, **personal injuries**, or **wrongful acts** all took place before the July 1, 1998 inception date of the Policy—including, "mental anguish," "mental injury" "[f]alse arrest, detention or imprisonment," "[m]alicious prosecution," "[a]ny violation of any federal, state or local civil rights" and "[a]ny negligent ministerial act" allegedly committed by the defendants in the *Clark & Hardin* Action leading to injury incurred by Jeffrey Clark or Hardin.

59.     Based on the foregoing, General Star is entitled to a judgment declaring that there is no coverage available under the General Star Policy because LAGIT has no contractual obligation to indemnify Metro under the LAGIT 1998-99 and 1999-00 Contracts given that coverage under those contracts is not triggered or is otherwise precluded or limited by the July 1, 1998 retroactive dates.

60.     General Star also is entitled to a judgment declaring that there is no coverage available under the General Star Policy for the *Clark & Hardin* Action because all **bodily injuries**, **personal injuries**, and **wrongful acts** were committed before the policy period.

61.     General Star also is entitled to a judgment that coverage is barred or limited on other grounds, including under Sections II.O., II.U, III.B., III. C., III.D., V.A.1., V.A.16, V.A.18, and VI.J of the General Star Policy, and the applicable terms of the 1998-99 and 1999-00 LAGIT Contracts.

## REQUEST FOR RELIEF

WHEREFORE, General Star respectfully requests that the Court enter judgment in its favor, and more specifically:

A. Declare that there is no coverage for *Clark & Hardin* Action under the General Star Policy because LAGIT has no contractual liability under the LAGIT 1998-99 or 1999-00 Coverage Contracts;

B. Declare that there is no coverage for the *Clark & Hardin* Action under the General Star Policy because no **bodily injury**, **personal injury**, or **wrongful act** occurred or took place during the July 1, 1998 to July 1, 2000 policy period;

C. Declare that coverage is barred or limited on other grounds under Sections II.O., II.U, III.B., III. C., III.D., V.A.1., V.A.16, V.A.18, and VI.J of the General Star Policy, and the applicable terms of the 1998-99 and 1999-00 LAGIT Contracts.

D. Award General Star its fees and costs incurred herein (where allowed by law);

and

E. Award General Star all other relief to which it may be entitled.

Dated: April 1, 2021                     Respectfully submitted,

 /s/ *Kendrick Wells IV*
Griffin Terry Sumner
J. Kendrick Wells IV
FROST BROWN TODD LLC
400 West Market Street, 32nd Floor
Louisville, Kentucky 40202-3363
P: (502) 589-5400
gsumner@fbtlaw.com
kwells@fbtlaw.com

Benjamin C. Eggert (*pro hac vice* forthcoming)
Karen L. Toto (*pro hac vice* forthcoming)
WILEY REIN LLP
1776 K Street, NW
Washington, DC 20006
P: (202) 719-7000
beggert@wiley.law
ktoto@wiley.law

*Counsel for General Star Indemnity Company*

0130368.0731772   4812-5481-9811