## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION
## CIVIL ACTION NO. 3:21-CV-00206-GNS-CHL

**GENERAL STAR INDEMNITY COMPANY,**                                              **Plaintiff,**

**v.**

**LOUISVILLE AREA GOVERNMENTAL**
**SELF INSURANCE TRUST, et al.,**                                                **Defendants.**

### MEMORANDUM OPINION AND ORDER

Before the Court is the Motion to Compel filed by Plaintiff General Star Indemnity Company ("General Star"). (DN 102.) Defendant Louisville Area Governmental Self Insurance Trust ("LAGIT") filed a response in opposition (DN 109), and Defendants Jeffrey Dewayne Clark ("Clark") and Garr Keith Hardin ("Hardin") filed a motion to join LAGIT's response (DN 113), which the Court granted (DN 126). General Star filed a reply. (DN 116.) Therefore, the Motion to Compel (DN 102) is ripe for review.

**I.     BACKGROUND**

This action centers on a coverage dispute related to another pending action in this Court. In the underlying action, Clark and Hardin initiated a civil rights action against Meade County, Kentucky; several Meade County law enforcement officers; Louisville Jefferson County Metro Government ("Louisville Metro"); the City of Louisville; several Louisville law enforcement officers; and a Kentucky State Police Crime Lab forensic serologist alleging that they "lost 22 years of their lives wrongfully incarcerated for a heinous 1992 murder they did not commit" due to police misconduct. DN 38, at PageID # 182, *Clark v. Louisville Jefferson County Metro Government*, No. 3:17-cv-419-GNS (filed May 1, 2018); DN 39, at PageID # 240, *Clark v. Louisville Jefferson County Metro Government*, No. 3:17-cv-419-GNS (filed May 1, 2018).

Separate actions were initially filed by the two men and later consolidated into one action. DN 1, *Clark v. Louisville Jefferson County Metro Government*, No. 3:17-cv-419-GNS (filed July 12, 2017); DN 1, *Hardin v. Louisville Jefferson County Metro Government*, No. 3:17-cv-420-CRS (filed July 12, 2017); DN 34, *Clark v. Louisville Jefferson County Metro Government*, No. 3:17-cv-419-GNS (ent'd Nov. 22, 2017). The Court will refer to Clark and Hardin's consolidated civil rights action herein as "the wrongful conviction action."

On April 1, 2021, General Star filed the instant action seeking a declaratory judgment that the Special Excess Liability Policy No. IXG 358532 issued by General Star to LAGIT for the policy period of July 1, 1998, to July 1, 2000, (the "Policy") does not provide defense or indemnity coverage for the wrongful conviction action. (DN 1, at ¶¶ 1-2.) Specifically, General Star asserted in its Complaint that "there is no coverage for the [wrongful conviction action] because no covered bodily injury, personal injury, or wrongful act occurred or took place during the July 1, 1998[,] to July 1, 2000[,] policy period." (*Id.* at ¶ 3 (emphasis omitted).) General Star also asserted that if the Policy is trigged, it also sought "a declaration that coverage is barred or limited on other grounds." (*Id.*) Later in the Complaint, it specified, "coverage may be barred or limited based on other grounds, including, but not limited to, application of Sections II.O[], II.U, III.B[], III. C[], III.D[], V.A.1[], V.A.16, V.A.18, and VI.J of the General Star Policy, and the applicable terms of the 1998-99 and 1999-00 LAGIT Contracts, as explained in General Star's coverage letters to LAGIT." (*Id.* at ¶ 53; *see also id.* at ¶ 61.) The specified provisions of the Policy relate to the definition of the term "occurrence," the definition of the term "Retained Limit," three provisions from the section of the Policy regarding "Limits of Insurance,"[1] a wrongful act exclusion, an

---

[1] Those three provisions state as follows:
    B.    Our duty to pay any sums that you become legally obligated to pay arises only after there has been a complete expenditure of your retained limit by means of payments for

exclusion for criminal/dishonest/fraudulent/malicious acts, an exclusion for personal or advertising injury, and a provision of the policy relating to "Other Insurance."[2] (DN 1-2.) It named as Defendants in its suit LAGIT, Louisville Metro, the City of Louisville, the Louisville law enforcement officers named in the wrongful conviction action, and Clark and Hardin themselves. (DN 1.)

In response, on May 28, 2021, LAGIT, Louisville Metro, the City of Louisville, and the named Louisville law enforcement officers except for Defendant Mark Handy ("Handy") filed an answer, and LAGIT also filed a counterclaim. (DN 30.) In its counterclaim LAGIT itself sought a declaratory judgment that "General Star follows the fortunes of LAGIT with respect to any settlement made of the [wrongful conviction action], in an amount up to and including the full

---

judgments, settlements, or defense costs. We will then be liable only for that portion of damages in excess of your retained limit up to our Limits of Insurance.
C.   The Per Occurrence or Wrongful Act Limit of Insurance is the most we will pay for the sum of all damages because of bodily injury, property damage, personal injury, or advertising injury arising out of a single occurrence or all losses arising out of a single wrongful act.
D.   All occurrences arising out of continuous, repeated, or related occurrences shall be treated as one occurrence. All wrongful acts arising out of continuous, repeated, or related wrongful acts shall be treated as one wrongful act. The Limits of Insurance in effect when the first claim is made and reported to us shall apply.

(DN 1-2, at § III.B-D (emphasis omitted).)

[2] That provision states as follows:
J.   Other Insurance
If other valid and collectible insurance is available to you for ultimate net loss we cover under this policy, our obligations under this policy are limited as follows:
   1.   As this insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis, except such insurance as is specifically purchased to apply in excess of this policy's Limits of Insurance, we will pay only our share of the amount of ultimate net loss, if any, that exceeds the greater of:
      a.   The sum of:
         i.   The total amount that all such other insurance would pay for the loss in the absence of this insurance; and
         ii.  The total of all deductible and self-insured amounts or participations under such other insurance; or
      b.   The retained limit as shown in the Declarations.
   2.   We have no duty to defend any claim or suit whether or not any other insurer has a duty to defend. If no other insurer defends. we may exercise our right to do so, but we will be entitled to your rights against all other insurers.

(DN 1-2, at § VI.J (emphasis omitted).)

limit(s) of the General Star Policy"; LAGIT also brought a breach of contract claim against General Star alleging that General Star had "materially breached their duties and obligations under the Policy by wrongfully denying coverage and causing damages in an amount to conform to proof at trial." (*Id.* at ¶¶ 23-29.) Handy, Clark, and Hardin filed answers to General Star's Complaint but not counterclaims. (DNs 35, 36.)

In its Answer to LAGIT's counterclaim, General Star specifically listed as affirmative defenses that "there is no coverage because all bodily injury, personal injuries, and wrongful acts took place before the policy period," "LAGIT has no contractual obligation to indemnify [Louisville] Metro under the LAGIT 1998-99 and 1999-00 Contracts given that coverage under those contracts is not triggered or is otherwise precluded or limited by the July 1, 1998 retroactive dates," the provisions of the Policy cited above as other grounds for denial of coverage, the fact that the Policy is not a reinsurance contract, the "Policy is not subject to the follow-the-fortunes doctrine," LAGIT failed to satisfy conditions precedent under or otherwise breached the terms of the Policy, the terms of the Policy preclude LAGIT's counterclaim, and the counterclaim failed to state a claim upon which relief can be granted. (DN 40.)

Clark and Hardin's claims in the wrongful conviction action against the City of Louisville, Louisville Metro, and the Louisville law enforcement officers, including Handy, settled in the fall of 2023 with the final settlement agreement dated September 7, 2023. (DN 102, at PageID # 3192; DN 102-2.) Thereafter, on November 29, 2023, General Star served additional requests for production of documents numbered 14 through 42 on LAGIT, Louisville Metro, the City of Louisville, Handy, and Defendant Jim Woosley ("Woosley"). (DN 102, at PageID # 3196.) Only LAGIT, Louisville Metro, and the City of Louisville initially responded, serving responses and objections on December 29, 2023, along with only four pages of documents. (*Id.* at 3196; DN

4

102-3.) General Star requested a privilege log from LAGIT and Louisville Metro as well as the status of responses from Handy and Woosley. (DN 102, at PageID # 3196.) The Parties exchanged several letters on these issues but were unable to resolve their dispute without Court intervention. (DNs 102-4, 102-5, 102-6.) In those letters and in other communications, Handy and Woosley adopted the responses previously served by LAGIT, the City of Louisville, and Louisville Metro. (DN 102-6.) After a telephonic status conference with the Court, the Court granted General Star leave to file the instant motion. (DN 101.) The instant motion was closely followed by the filing of a motion for summary judgment by LAGIT. (DN 108.) The Parties then disputed which should receive a ruling first, the motion to compel or the dispositive motion. (DNs 110, 119.) After another status conference with the Parties, the Court granted General Star's request for an extension of its deadline to respond to the motion for summary judgment until after the ruling on the motion to compel and denied LAGIT's motion to stay discovery pending a ruling on the dispositive motion. (DN 126.)

## II. DISCUSSION

### A. Legal Standard

Trial courts have wide discretion in dealing with discovery matters. *See S.S. v. E. Ky. Univ.*, 532 F.3d 445, 451 (6th Cir. 2008) (quoting *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981)). Fed. R. Civ. P. 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). This language is broadly construed by the federal courts to include "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see also Marsico v. Sears Holding Corp.*, 370 F. App'x 658, 664 (6th

Cir. 2010) (quoting *Oppenheimer*, 437 U.S. at 351).  The scope of discovery is not without limits, however.  In assessing whether information is within the scope of discovery, the Court is directed to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

Federal Rule of Civil Procedure 37 allows a party to move for an order compelling disclosure or discovery when "a party fails to answer an interrogatory submitted under Rule 33" or "fails to produce documents . . . as requested under Rule 34."  Fed. R. Civ. P. 37(a)(3)(B)(iii), (iv).  Under Rule 37, an "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."  Fed. R. Civ. P. 37(a)(4).  When an objection to relevance is raised, the party seeking discovery must demonstrate that the requests are relevant to the claims or defenses in the action.  *Anderson v. Dillard's, Inc.*, 251 F.R.D. 307, 309-10 (W.D. Tenn. 2008).  If that party demonstrates relevancy, the burden shifts to the party resisting discovery to demonstrate why the information or documents are not discoverable under the Federal Rules.  *Id.*; *see also Invesco Institutional (N.A.), Inc. v. Paas*, 244 F.R.D. 374, 380 (W.D. Ky. 2007) (citing *Horizon Holdings, LLC v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 211-212 (D. Kan. 2002)) ("When the discovery material sought appears to be relevant, the party who is resisting production has the burden to establish that the material either does not come within the scope of relevance or is of such marginal relevance that the potential harm resulting from production outweighs the presumption in favor of broad disclosure.").

### B. Analysis

General Star seeks to compel responses to twenty of the twenty-nine requests it served. It broke the requests into three categories: (1) requests relating to LAGIT's primary liability insurance coverage; (2) requests relating to communications with counsel for Clark and Hardin; and (3) requests relating to the alleged loss, the settlement, and the decision to settle in the wrongful conviction action. The Court will address these categories below though it will break up LAGIT's third category into two subdivisions for ease of analysis.

#### 1. Requests Relating to LAGIT's Primary Liability Insurance Coverage

General Star first moved to compel responses to Request Nos. 32, 33, 34, 35, and 36 (DN 102, at PageID # 3198-202), which stated as follows:

> **REQUEST NO. 32:** All Documents and Communications reflecting the availability of coverage for the Settlement Agreement under the LAGIT 1998-99 Contract.
>
> **REQUEST NO. 33:** All Documents and Communications reflecting the availability of coverage for the Settlement Agreement under the LAGIT 1999-00 Contract.
>
> **REQUEST NO. 34:** All Documents and Communications reflecting the availability of coverage for the Settlement Agreement under any other potentially applicable LAGIT Contract.
>
> **REQUEST NO. 35:** All Documents and Communications relating to potential insurance coverage that may indemnify any cause of action released under the Settlement Agreement.
>
> **REQUEST NO. 36:** All Documents and Communications relating to potential insurance coverage that may indemnify any party to the Settlement Agreement.

(DN 102-3, at PageID # 3252-56.) LAGIT, Louisville Metro, and the City of Louisville's response to each of these requests were substantially similar; they stated,

> Defendants object to this request because it seeks information or documents not relevant to any party's claims or defenses. Defendants further object to this

>request on the ground that it is vague and ambiguous. . . . Defendants further object to the extent this request seeks information or documents protected by the attorney-client privilege, joint defense privilege, or common interest privilege, or immune from discovery under the work-product immunity.
>
>Expressly subject to and without waiving any specific or general objections, Defendants state that the dispute in this coverage litigation concerns General Star's obligation to defend or indemnify the Defendants under the General Star Policy. Accordingly, Defendants refer General Star to the terms of the General Star Policy. Additional information pertaining to the General Star Policy is within Plaintiff's possession, custody, or control.

(DN 102-3, at PageID # 3252-56.) They also asserted other specific objections to particular words and phrases in each of the requests and as to Request Nos. 35 and 36 asserted overbreadth, undue burden, and proportionality objections. (*Id.*)

In its motion to compel, General Star argued that these requests are relevant because the existence of "coverage under LAGIT's primary policies is a core requirement of the insuring agreement in General Star's" Policy. (DN 102, at PageID # 3199.) LAGIT argued in response that the terms of the coverage contracts are immaterial given the specific language of General Star's policy. (DN 109, at PageID # 3521-24.) It cited to General Star's refusal to produce its own underwriting files in discovery, citing one of General Star's discovery responses in which it stated that "whether the [wrongful conviction action] settlement is covered under the plain language of the General Star Policy is the only issue to resolve in the litigation" as proof that General Star has taken an inconsistent position with respect to relevance. (*Id.* at 3523.) In its reply, General Star argued that LAGIT has overlooked that the standard for relevance in discovery is broader than LAGIT would prefer. (DN 116, at PageID # 3608-10.)

On balance, the Court finds that the information sought in Request Nos. 32-34 is relevant. While their briefs make clear that General Star and LAGIT have a disagreement about whether and, if so, how the terms of LAGIT's coverage contracts play into the existence of coverage under the Policy, that General Star considered the terms of those contracts to have a role to play is evident

8

in reading its Complaint and Answer to LAGIT's counterclaim. Whether General Star is correct about that position is not for the Court to determine in ruling on a motion to compel discovery. The Court also finds that Request Nos. 35-36 seek relevant information and documents. These requests are not on their face limited solely to the terms of LAGIT's coverage contracts; instead, they reference "potential insurance coverage" generally. As noted above, in its Complaint and Answer to LAGIT's counterclaim, General Star asserted that coverage may be barred by provisions of the policy related to "Other Insurance." (DN 1, at ¶¶ 63, 61; DN 40.) Given this claim/defense and the pertinent Policy language quoted above, whether there is coverage for the settlement agreement under any other insurance policy is relevant.

Having found that the documents requested by Request Nos. 32-36 are relevant, the Court must now consider the propriety of LAGIT, Louisville Metro, and the City of Louisville's other objections to those requests. In doing so, the Court notes that a number of the responses at issue contain impermissible boilerplate objections. As this Court has discussed at length in prior opinions, boilerplate objections are forbidden by the Federal Rules of Civil Procedure. Fed. R. Civ. P. 33(b)(3) (requiring objections to interrogatories to be made with specificity); Fed. R. Civ. P. 34(b)(2)(B) (requiring objections to requests for production to "state with specificity" the grounds for objecting to the request). *See also Mitchell v Universal Music Group, Inc.*, No. 3:15-cv-174-JHM, 2018 WL 1573233, at *4-7 (W.D. Ky. Mar. 30, 2018), *rev'd in part on other grounds*, 2018 WL 2011934 (W.D. Ky. Apr. 30, 2018) (sustaining parties' objections in part regarding award of costs but affirming conclusion regarding waiver of objections); *Janko Enterprises, Inc. v. Long John Silver's, Inc.*, No. 3:12-CV-345-S, 2013 WL 5308802, at *7 (W.D. Ky. Aug. 19, 2013) ("Unexplained and unsupported 'boilerplate' objections clearly are improper.") Boilerplate is defined as "[r]eady-made or all purpose language that will fit in a

9

variety of documents." *Boilerplate*, Black's Law Dictionary (11th ed. 2019). "When objections lack specificity, they lack effect: an objection that does not explain its grounds (and the harm that would result from responding) is forfeited." *Wesley Corp. v. Zoom T.V. Products, LLC*, No. 17-10021, 2018 WL 372700, at *4 (E.D. Mich. Jan. 11, 2018). While the Court could deem the objections waived, the Court will consider the merits of at least the objections discussed below.

First, as to their objections to the phrases "reflecting the availability of coverage for the Settlement Agreement under the LAGIT 1998-99 Contract," "reflecting the availability of coverage for the Settlement Agreement under the LAGIT 1999-00 Contract," and "reflecting the availability of coverage for the Settlement Agreement under any other potentially applicable LAGIT Contract" as vague and ambiguous, the Court finds this objection disingenuous. The terms of Request Nos. 32-34 are, including the challenged phrases, are clear on their face.

Second, as to the overbreadth, undue burden, and proportionality objections raised with respect to Request Nos. 35-36, the Court finds these objections too generic to be meritorious. LAGIT, Louisville Metro, and the City of Louisville only vaguely referenced in support the volume of documents and the time it would take to review and locate the same without any specific details to quantify or support their objections. The basis they asserted could be the basis for an objection to any discovery request as all discovery is to an extent voluminous and time consuming. That alone is not a legitimate basis to support proportionality or undue burden objections without context. Additionally, while LAGIT asserted that General Star's definition of "relating to" broadened that request, no party provided the Court with the definition of that term. And the Court cannot say that the request is overbroad based on the ordinary meaning of that phrase. The Court also simply doubts the assertions about how much work it would be to respond to those requests. Combined, Request Nos. 35 and 36 at issue ask for documents and communications relating to

10

potential coverage for the parties to and claims released in the settlement agreement at issue. Given the other requests at issue include ones specifically related to LAGIT's coverage contracts, the Court believes that Request Nos. 35 and 36 are narrower than LAGIT makes them out to be. In particular, the Court finds the existence of "other insurance" unlikely given the players in this action and the limited policy period at issue. And if that is the case, then there are likely very few, if any, documents or communications to produce in response to Request Nos. 35 and 36. For these reasons, the Court finds that overbreadth, undue burden, and proportionality objections without merit.

Third and finally, as to the objections that the requests seek privileged or other protected information, the Court is unable to assess the basis of these objections because LAGIT, Louisville Metro, and the City of Louisville did not serve a privilege log despite General Star's repeated requests for one. The Court is perplexed by the fact that a privilege log was not already served. Fed. R. Civ. P. 26(b)(5) requires a party "withhold[ing] information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material" to "expressly make the claim" and to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5). The instant responses do none of these things and are, therefore, invalid under the rules. Later in its response to General Star's motion, LAGIT argued that it should not be required to identify any communications made subsequent to the start of litigation on its privilege log, citing several non-binding, out-of-district cases. (DN 109, at PageID # 3527-28.) General Star emphasized in its reply that it was "not seeking communications between LAGIT and its counsel, nor between Metro and its counsel." (DN 116, at PageID # 3614.) Given both this

11

statement by General Star and the general balance of the factors under Rule 26, the Court agrees in part with LAGIT in that it will not require LAGIT, Louisville Metro, and or the City of Louisville to identify clearly attorney-client privileged communications post-dating the filing of General Star's Complaint on its privilege log to avoid the undue burden such a requirement would likely impose given the expectedly large number of such communications. Thus, LAGIT, Louisville Metro, the City of Louisville, Handy, and Woosley shall serve supplemental responses to Request Nos. 32-36 and a privilege log as set forth below.

### 2. Requests Relating to Communications with Counsel for Clark and Hardin

Next, General Star moved to compel responses to Request Nos. 19, 20, 21, and 22 (DN 102, at PageID # 3202-06), which stated as follows:

> **REQUEST NO. 19:** All Communications between LAGIT and Lathrop GPM concerning the prosecution of any claims for Recovery as defined in the Settlement Agreement.
>
> **REQUEST NO. 20:** All Communications between Metro and Lathrop GPM concerning the prosecution of any claims for Recovery as defined in the Settlement Agreement.
>
> **REQUEST NO. 21:** All Communications between LAGIT and Lathrop GPM concerning the Insurance Litigation as defined in the Settlement Agreement.
>
> **REQUEST NO. 22:** All Communications between Metro and Lathrop GPM concerning the Insurance Litigation as defined in the Settlement Agreement.

(DN 102-3, at PageID # 3242-46.) LAGIT, Louisville Metro, and the City of Louisville objected to these requests on numerous grounds including that the requests did not seek relevant information; the requests were vague, ambiguous, overbroad, unduly burdensome, and not proportional to the needs of this action; and the requests sought information or documents protected by the attorney-client privilege, joint defense privilege, common interest privilege, or work product doctrine. (*Id.*) Again, these objections are largely boilerplate.

12

In its Motion to Compel, General Star argued that "the requests relate to the settlement agreement for which LAGIT seeks coverage in this coverage litigation." (DN 102, at PageID # 3203.) It explained that because under the settlement agreement, Clark and Hardin's counsel are responsible for developing strategy and drafting LAGIT's court filings, "the requested communications are directly relevant to this coverage action." (*Id.* at 3205.) It argued that the other objections in the responses were either boiler-plate or unfounded and, in particular, it argued that LAGIT, Louisville Metro, and the City of Louisville had not established the applicability of any joint defense or common interest privilege with Clark and Hardin's counsel. (*Id.* at 3203-06.) In its response, LAGIT argued that General Star hadn't demonstrated that the requested communications are relevant and characterized General Star's motion as "conceding that General Star just wants to know its opponents' litigation strategy." (DN 109, at PageID # 3524.) General Star disputed this point in its reply, again arguing that "[t]hese matters go to the core of this coverage litigation." (DN 116, at PageID # 3611.) It argued that because the settlement agreement is relevant, "communications about recovery under and litigation about that same settlement are equally relevant." (*Id.*) It also argued that the communications are "directly relevant to LAGIT's obligation to establish a duty to indemnify." (*Id.* at 3612.)

General Star's generic assertions of relevance ring hollow to the Court. While the Court understands why General Star might want the communications given the unusual provisions in the settlement agreement, the Court is not convinced that the requested communications are relevant to the claims and defense in this action. As set forth above, the issues in this action are limited to whether there is coverage for the wrongful conviction action, which does include whether there is coverage for the settlement agreement. But the Court is unconvinced that General Star needs anything beyond the settlement agreement itself, the terms of the Policy, and the filings and

13

discovery materials from the wrongful conviction action to address these issues. And the Court has to agree with LAGIT that given the delegation of authority in the settlement agreement for developing strategy for this action, the requests at issue do seem akin to asking Defendants to open their litigation playbooks. The Court is unconvinced doing so here is necessary or appropriate given the claims and defenses themselves pled by the Parties. Instead, as noted, the existence (or not) of coverage will turn on other documents than the ones sought by General Star here.

Accordingly, the Court will deny the instant Motion to Compel as to Request Nos. 19-22 and need not reach any of the objections at issue.

### 3. Requests Relating to the Alleged Loss in the Wrongful Conviction Action

General Star also moved to compel responses to Request Nos. 14, 38, 39, and 40 (DN 102, at PageID # 3206-09), which stated as follows:

> **REQUEST NO. 14:** All Documents and Communications concerning defense costs incurred in the Underlying Action.
>
> **REQUEST NO. 38:** All Documents and Communications reflecting any payment made by Metro under any contract issued by LAGIT to the City or Metro in connection with the Underlying Action.
>
> **REQUEST NO. 39:** All Documents and Communications reflecting any payment received by LAGIT under any contract issued by LAGIT to the City or Metro in connection with the Underlying Action.
>
> **REQUEST NO. 40:** All Documents and Communications reflecting any payment made by LAGIT pursuant to the Settlement Agreement under any contract issued by LAGIT to the City or Metro.

(DN 102-3, at PageID # 3239-40, 3257-59.) LAGIT, Louisville Metro, and the City of Louisville objected to these requests on numerous grounds including that the requests were vague, ambiguous, overbroad, unduly burdensome, and not proportional to the needs of this action, as well as on grounds the requests sought information or documents protected by the attorney-client

privilege, joint defense privilege, common interest privilege, or work product doctrine. (*Id.*) However, these entities did produce a single page chart with a summary of the total amounts paid in connection with the wrongful conviction action. (DN 102, at PageID # 3207.) Again, numerous of the objections are boilerplate.

In its Motion to Compel, General Star argued that it "has a right to rate information and costs, for which reimbursement may be sought to evaluate whether the attorneys' activity was reasonable, appropriate, and necessary to the defense of the [wrongful conviction action]." (*Id.*) LAGIT contended in its response that General Star had not established why these documents were relevant. (DN 109, at PageID # 3526.) It noted that the issue of defense cost reimbursement is moot for now given that no determination about coverage has yet been made. (*Id.* at 3527.) General Star disputed this position in its reply, arguing that it should be entitled to this information before summary judgment motions are resolved. (DN 116, at PageID # 3617-18.)

The Court again finds the information sought by General Star to be of dubious relevance at this stage in *coverage* litigation. The question in this litigation is whether coverage exists under the Policy, not whether defense costs spent were reasonable in the wrongful conviction action. The latter is not referenced at all either in General Star's Complaint or Answer to LAGIT's counterclaim. As with the requests above regarding communications between defense counsel and counsel for Clark and Hardin, the Court understands why General Star might want this information. And even more so with the defense costs, the Court understands why there might be a need to have such information eventually. But not until there has been a determination as to whether coverage exists at all, at which time, the Court would hope that the Parties could work these issues out without the need for further intervention from the Court. Accordingly, the Court

will deny the instant Motion to Compel as to Request Nos. 14 and 38-40 and need not reach any of the objections at issue.

> 4. **Requests Relating to the Settlement, and the Decision to Settle in the Wrongful Conviction Action**

Finally, General Star moved to compel responses to Request Nos. 23-29 (DN 102, at PageID # 3209), which provided as follows:

> **REQUEST NO. 23:** All Documents and Communications concerning the negotiation, execution, or implementation of the Settlement Agreement.
>
> **REQUEST NO. 24:** All Documents and Communications relating to LAGIT's decision to enter into the Settlement Agreement.
>
> **REQUEST NO. 25:** All Documents and Communications related to Metro's decision to enter into the Settlement Agreement.
>
> **REQUEST NO. 26:** All Documents and Communications relating to Jeffrey Clark's decision to enter into the Settlement Agreement.
>
> **REQUEST NO. 27:** All Documents and Communications relating to Hardin's decision to enter into the Settlement Agreement.
>
> **REQUEST NO. 28:** All Documents and Communications relating to Mark Handy's decision to enter into the Settlement Agreement.
>
> **REQUEST NO. 29:** All Documents and Communications relating to Jim Woosley's decision to enter into the Settlement Agreement.

(DN 102-3, at PageID # 3246-52.) LAGIT, Louisville Metro, and the City of Louisville objected to these requests on numerous grounds including that the requests were vague, ambiguous, overbroad, unduly burdensome, and not proportional to the needs of this action, as well as on grounds the requests sought information or documents protected by the attorney-client privilege, joint defense privilege, common interest privilege, or work product doctrine. (*Id.*) As to Request Nos. 26 and 27, they also objected that they did not have those documents in their control. (*Id.* at 3249.)

General Star only briefly addressed these requests in its Motion to Compel, arguing in one paragraph that the raised objections were boilerplate and that it was entitled to the requested documents. (DN 102, at PageID # 3209.) In its response, LAGIT pointed out that General Star had not demonstrated that the sought documents were relevant and also noted that pursuant to an agreement signed by the Parties, the mediation after which the settlement occurred was to be entirely confidential. (DN 109, at PageID #3526-27.) In its reply, General Star stated that "settlement-related documents are relevant because they are core to LAGIT's claim and General Star's defenses." (DN 116, at PageID # 3618.)

For the same reasons set forth above regarding Request Nos. 19-22, General Star's assertions of relevance still ring hollow to the Court. The issues in this action are limited to whether there is coverage for the wrongful conviction action, which does include whether there is coverage for the settlement agreement. But the Court is still unconvinced that General Star needs anything beyond the settlement agreement itself, the terms of the Policy, and the filings and discovery materials from the wrongful conviction action to address these issues. General Star does not contend that those materials are not already within its possession. Accordingly, the Court will deny the instant Motion to Compel as to Request Nos. 23-29 and need not reach any of the objections at issue.

### III.   CONCLUSION AND ORDER

For the reasons set forth above, IT IS HEREBY ORDERED that General Star's Motion to Compel (DN 102) is **GRANTED IN PART** and **DENIED IN PART**:

(1)   The motion is **GRANTED** as to Request Nos. 32-36.

(2)   The motion is **DENIED** as to Request Nos. 14, 19-22, 23-29, and 38-40.

(3) On or before **December 13, 2024**, LAGIT, Louisville Metro, the City of Louisville, Handy, and Woosley shall serve supplemental responses to Request Nos. 32-36 to include a privilege log. As set forth above, the privilege log need not include communications between these entities and only their counsel of record in this case that post-date the filing of the April 1, 2021, Complaint in this matter.

(4) On or before **December 4, 2024**, the Parties shall file an agreed briefing schedule for responses and replies to LAGIT's Motion for Summary Judgment (DN 108).

Colin H Lindsay, Magistrate Judge
United States District Court

cc: Counsel of record
November 20, 2024