**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:21-CV-00206-GNS-CHL**

**GENERAL STAR INDEMNITY COMPANY,**                                        **Plaintiff,**

**v.**

**LOUISVILLE AREA GOVERNMENTAL**
**SELF INSURANCE TRUST, et al.,**                                        **Defendants.**

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion to Compel filed by Plaintiff General Star Indemnity Company ("General Star").  (DN 133.)  Defendants Louisville Area Governmental Self Insurance Trust ("LAGIT"), Louisville-Jefferson County Metro Government ("Louisville Metro"), Mark Handy ("Handy"), James Clark ("J. Clark"), Kelly Jones ("Jones"), Robert L. Ennis ("Ennis"), Charles Edelen ("Edelen"), Jim Woosley ("Woosley"), James W. Griffiths ("Griffiths"), Jeffrey Dewayne Clark ("Clark"), and Garr Keith Hardin ("Hardin") (collectively "Defendants") filed a combined response, and General Star filed a reply.  (DNs 137, 138.)  Therefore, the Motion to Compel (DN 133) is ripe for review.

**I.       BACKGROUND**

This action centers on a coverage dispute related to another action in this Court.  In the underlying action, Defendants Clark and Hardin initiated a civil rights action against Meade County, Kentucky; several Meade County law enforcement officers; Louisville Metro; Louisville law enforcement officers Defendants Handy, J. Clark, Jones, Ennis, Edelen, Woosley, and Griffiths; and a Kentucky State Police Crime Lab forensic serologist alleging that they "lost 22 years of their lives wrongfully incarcerated for a heinous 1992 murder they did not commit" due to police misconduct.  DN 38, at PageID # 182, *Clark v. Louisville Jefferson County Metro*

*Government*, No. 3:17-cv-419-GNS (filed May 1, 2018); DN 39, at PageID # 240, *Clark v. Louisville Jefferson County Metro Government*, No. 3:17-cv-419-GNS (filed May 1, 2018). Separate actions were initially filed by the two men and later consolidated into one action. DN 1, *Clark v. Louisville Jefferson County Metro Government*, No. 3:17-cv-419-GNS (filed July 12, 2017); DN 1, *Hardin v. Louisville Jefferson County Metro Government*, No. 3:17-cv-420-CRS (filed July 12, 2017); DN 34, *Clark v. Louisville Jefferson County Metro Government*, No. 3:17-cv-419-GNS (ent'd Nov. 22, 2017). The Court will refer to Clark and Hardin's consolidated civil rights action herein as "the wrongful conviction action."

On April 1, 2021, General Star filed the instant action seeking a declaratory judgment that the Special Excess Liability Policy No. IXG 358532 issued by General Star to the LAGIT, of which Louisville Metro is a member, for the policy period of July 1, 1998, to July 1, 2000, (the "Policy") does not provide defense or indemnity coverage for the wrongful conviction action. (DN 1, at ₧₧ 1-2, 7.) Specifically, General Star asserted in its Complaint that "there is no coverage for the [wrongful conviction action] because no covered bodily injury, personal injury, or wrongful act occurred or took place during the July 1, 1998[,] to July 1, 2000[,] policy period." (*Id.* at ₧ 3 (emphasis omitted).) General Star also asserted that if the Policy is trigged, it also sought "a declaration that coverage is barred or limited on other grounds." (*Id.*) Later in the Complaint, it specified, "coverage may be barred or limited based on other grounds, including, but not limited to, application of Sections II.O[], II.U, III.B[], III. C[], III.D[], V.A.1[], V.A.16, V.A.18, and VI.J of the General Star Policy, and the applicable terms of the 1998-99 and 1999-00 LAGIT Contracts, as explained in General Star's coverage letters to LAGIT." (*Id.* at ₧ 53; *see also id.* at ₧ 61.) The specified provisions of the Policy relate to the definition of the term "occurrence," the definition of the term "Retained Limit," three provisions from the section of the Policy regarding "Limits of

Insurance,"[1] a wrongful act exclusion, an exclusion for criminal/dishonest/fraudulent/malicious acts, an exclusion for personal or advertising injury, and a provision of the policy relating to "Other Insurance."[2]  (DN 1-2.)  General Star named as Defendants in its suit LAGIT, Louisville Metro, the Louisville law enforcement officers named in the wrongful conviction action, and Clark and Hardin themselves.  (DN 1.)

In response, on May 28, 2021, LAGIT, Louisville Metro, and the named Louisville law enforcement officers except for Handy filed an answer, and LAGIT also filed a counterclaim.  (DN 30.)  In its counterclaim LAGIT itself sought a declaratory judgment that "General Star follows the fortunes of LAGIT with respect to any settlement made of the [wrongful conviction action], in

---

[1] Those three provisions state as follows:

    B.    Our duty to pay any sums that you become legally obligated to pay arises only after there has been a complete expenditure of your retained limit by means of payments for judgments, settlements, or defense costs. We will then be liable only for that portion of damages in excess of your retained limit up to our Limits of Insurance.

    C.    The Per Occurrence or Wrongful Act Limit of Insurance is the most we will pay for the sum of all damages because of bodily injury, property damage, personal injury, or advertising injury arising out of a single occurrence or all losses arising out of a single wrongful act.

    D.    All occurrences arising out of continuous, repeated, or related occurrences shall be treated as one occurrence. All wrongful acts arising out of continuous, repeated, or related wrongful acts shall be treated as one wrongful act. The Limits of Insurance in effect when the first claim is made and reported to us shall apply.

(DN 1-2, at § III.B-D (emphasis omitted).)

[2] That provision states as follows:

    J.    Other Insurance

If other valid and collectible insurance is available to you for ultimate net loss we cover under this policy, our obligations under this policy are limited as follows:

    1.    As this insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis, except such insurance as is specifically purchased to apply in excess of this policy's Limits of Insurance, we will pay only our share of the amount of ultimate net loss, if any, that exceeds the greater of:

        a.    The sum of:

            i.    The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

            ii.    The total of all deductible and self-insured amounts or participations under such other insurance; or

        b.    The retained limit as shown in the Declarations.

    2.    We have no duty to defend any claim or suit whether or not any other insurer has a duty to defend. If no other insurer defends. we may exercise our right to do so, but we will be entitled to your rights against all other insurers.

(DN 1-2, at § VI.J (emphasis omitted).)

an amount up to and including the full limit(s) of the General Star Policy"; LAGIT also brought a breach of contract claim against General Star alleging that General Star had "materially breached their duties and obligations under the Policy by wrongfully denying coverage and causing damages in an amount to conform to proof at trial." (*Id.* at ₱₱ 23-29.)  Handy, Clark, and Hardin filed answers to General Star's Complaint but not counterclaims.  (DNs 35, 36.)

In its Answer to LAGIT's counterclaim, General Star specifically listed as affirmative defenses that "there is no coverage because all bodily injury, personal injuries, and wrongful acts took place before the policy period," "LAGIT has no contractual obligation to indemnify [Louisville] Metro under the LAGIT 1998-99 and 1999-00 Contracts given that coverage under those contracts is not triggered or is otherwise precluded or limited by the July 1, 1998 retroactive dates," the provisions of the Policy cited above as other grounds for denial of coverage, the fact that the Policy is not a reinsurance contract, the "Policy is not subject to the follow-the-fortunes doctrine," LAGIT failed to satisfy conditions precedent under or otherwise breached the terms of the Policy, the terms of the Policy preclude LAGIT's counterclaim, and the counterclaim failed to state a claim upon which relief can be granted.  (DN 40.)

Clark and Hardin's claims in the wrongful conviction action against Louisville Metro and the Louisville law enforcement officers, including Handy, settled in the fall of 2023 with the final settlement agreement dated September 7, 2023.  (DN 102, at PageID # 3192; DN 102-2.) Thereafter, the Parties had a dispute about certain written discovery served by General Star that came to the Court for resolution via a Motion to Compel filed by General Star.  (DN 102.)  That motion was closely followed by the filing of a motion for summary judgment by LAGIT.  (DN 108.)  The Parties then disputed which should receive a ruling first, the motion to compel or the dispositive motion.  (DNs 110, 119.)  After another status conference with the Parties, the Court

granted General Star's Rule 56(d) request for an extension of its deadline to respond to the motion for summary judgment and denied LAGIT's motion to stay discovery pending a ruling on the dispositive motion. (DN 126.) The Court ruled on General Star's Motion to Compel (DN 102) regarding written discovery in its November 20, 2024, Memorandum Opinion and Order. (DN 127.) In that opinion, in assessing whether materials requested by General Star were relevant, the Court stated that it was "unconvinced that General Star needs anything beyond the settlement agreement itself, the terms of the Policy, and the filings and discovery materials from the wrongful conviction action" to prosecute the claims and defenses in this action. (*Id.* at PageID # 4162-63, 4166.) Following that ruling, the Court set a fact discovery deadline and a deadline for responses and replies to LAGIT's pending Motion for Summary Judgment (DN 108). (DN 130.)

Thereafter, General Star sought to depose the nine individually named Defendants and to take depositions of corporate representatives pursuant to Fed. R. Civ. P. 30(b)(6) of Defendants Louisville Metro and LAGIT. (DN 133, at PageID # 4182.) But all of the individual Defendants refused to testify and Louisville Metro and LAGIT objected to all of the topics listed in the Rule 30(b)(6) deposition notices served by General Star. (*Id.* at 4184; DN 133-2; 133-3.) The Court held a telephonic status conference with the Parties about their dispute but was unable to assist them in finding a compromise. (DNs 131, 132.) Accordingly, it granted leave for General Star to file the instant motion. (DN 133.)

While the instant motion was pending, Hardin settled all his remaining claims in the wrongful conviction action. DN 514, *Clark v. Louisville Jefferson County Metro Government*, No. 3:17-cv-419-GNS (filed Nov. 24, 2025); DN 602, *Clark v. Louisville Jefferson County Metro Government*, No. 3:17-cv-419-GNS (filed Feb. 6, 2026). Clark's remaining claims against Meade County and its law enforcement officers were tried in a four-week jury trial after which the jury

5

returned a verdict in Clark's favor totaling $24,350,000 in compensatory damages and $74,791.75 in punitive damages.  DN 672, *Clark v. Louisville Jefferson County Metro Government*, No. 3:17-cv-419-GNS (filed Apr. 29, 2026).  The Court entered a final and appealable judgment in the wrongful conviction action on May 19, 2026.  DN 695, *Clark v. Louisville Jefferson County Metro Government*, No. 3:17-cv-419-GNS (filed May 19, 2026).

## II.     DISCUSSION

### A.     Legal Standard

Trial courts have wide discretion in dealing with discovery matters.  *See S.S. v. E. Ky. Univ.*, 532 F.3d 445, 451 (6th Cir. 2008) (quoting *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981)).  Fed. R. Civ. P. 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."  Fed. R. Civ. P. 26(b)(1).  This language is broadly construed by the federal courts to include "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see also Marsico v. Sears Holding Corp.*, 370 F. App'x 658, 664 (6th Cir. 2010) (quoting *Oppenheimer*, 437 U.S. at 351).  But while the scope of discovery under the Federal Rules of Civil Procedure is quite broad, *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998), it is not without limits.  In assessing whether information is within the scope of discovery, the Court is directed to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

Rule 30 allows a party to take the deposition of any person, including another party, without leave of court.  Fed. R. Civ. P. 30(a)(1).  Federal Rule of Civil Procedure 37 allows a party to move for an order compelling disclosure or discovery, including where a deponent has failed to answer a question(s) or where a party has failed to make a designation under Rule 30(b)(6).  Fed. R. Civ. P. 37(a)(1), (a)(3)(B)(i)-(ii).  When an objection to relevance is raised, the party seeking discovery must demonstrate that the requests are relevant to the claims or defenses in the action.  *Anderson v. Dillard's, Inc.*, 251 F.R.D. 307, 309-10 (W.D. Tenn. 2008).  If that party demonstrates relevancy, the burden shifts to the party resisting discovery to demonstrate why the information or documents are not discoverable under the Federal Rules.  *Id.*; *see also Invesco Institutional (N.A.), Inc. v. Paas*, 244 F.R.D. 374, 380 (W.D. Ky. 2007) (citing *Horizon Holdings, LLC v. Genmar Holdings, Inc.,* 209 F.R.D. 208, 211-212 (D. Kan. 2002)) ("When the discovery material sought appears to be relevant, the party who is resisting production has the burden to establish that the material either does not come within the scope of relevance or is of such marginal relevance that the potential harm resulting from production outweighs the presumption in favor of broad disclosure.").  However, either on motion or on its own, the Court must limit discovery that is unreasonably cumulative or duplicative; that can be obtained from another "more convenient, less burdensome, or less expensive" source; that the seeking party has had ample opportunity to obtain; or that is outside the scope permitted by Fed. R. Civ. P. 26(b)(1).  Fed. R. Civ. P. 26(b)(2)(C).

**B.  Analysis**

General Star seeks to compel LAGIT to produce Rule 30(b)(6) deposition testimony on eighteen specified topics, Louisville Metro to produce Rule 30(b)(6) deposition testimony on sixteen specified topics, and Defendants Clark, Hardin, Handy, J. Clark, Jones, Ennis, Edelen, Woosley, and Griffiths to sit for individual depositions.  (DN 133.)  The Court will group the

requested depositions and Rule 30(b)(6) topics as appropriate to resolve the arguments raised by the Parties in their briefing below. (DNs 133, 137, 138.) The Court will generally refer to the Rule 30(b)(6) notices by "Topic No. x" where the topics are the same as to both Louisville Metro and LAGIT and will use "Topic No. x (LAGIT)" or "Topic No. x (Louisville Metro)" to indicate topics unique to individual notices.

As a preliminary matter, the Court also notes that Defendants construed General Star's Motion (DN 133) as not seeking to compel testimony from Louisville Metro on Topic Nos. 10-15 (Louisville Metro). (DN 137, at PageID # 4544 n.23.) But the Court disagrees with that construction. General Star's Motion to Compel references "deposition Topics 10-15 and 16-17 (to LAGIT)." (DN 133, at PageID # 4194.) But Topic Nos. 10-15 largely overlap as between Louisville Metro and LAGIT and Topic No. 16 (Louisville Metro) is addressed in a separate section of General Star's brief. Thus, the fact that General Star did not address Defendants' footnote in its reply notwithstanding, the Court construes General Star's Motion to Compel (DN 133) as seeking to compel testimony from Louisville Metro and General Star on all topics previously noticed and will address the motion accordingly.

### 1.    Rule 30(b)(6) Topic Nos. 1-2 and the Individual Defendant Depositions

General Star moved to compel depositions of Defendants Handy, J. Clark, Jones, Ennis, Edelen, Woosley, Griffiths, Clark, and Hardin and for LAGIT and Louisville Metro to designate a representative(s) to testify about:

> **TOPIC NO. 1:** The [wrongful conviction a]ction,[3] including the facts and liabilities alleged therein, the procedural history, fact and expert discovery, legal theories and defenses asserted by the parties, and any judgments or orders issued in that action.

---

[3] The deposition notices referred to the "underlying action," which was defined as being the same lawsuit the Court has indicated herein it will refer to as the "wrongful conviction" action. (DN 133-4, at PageID # 4221; DN 133-5, at PageID # 4227.) The Court will use its own language for consistency and clarity.

8

**TOPIC NO. 2:** The investigation, indictment, conviction, and post-conviction legal proceedings of the plaintiffs in the [wrongful conviction a]ction relating to the murder of Rhonda Sue Warford in 1992.

(DN 133, at PageID # 4187-92, 4198-202; DN 133-2, at PageID # 4208-09; DN 133-3, at PageID # 4214-15; DN 133-4, at PageID # 4221; DN 133-5, at PageID # 4227.)  LAGIT and Louisville Metro objected to the proposed topics as overly broad, unduly burdensome, and beyond the scope of discovery, citing the Court's prior Memorandum Opinion and Order (DN 127).  (DN 133-2, at PageID # 4208-09; DN 133-3, at PageID # 4214-15.)  As set forth above, in that opinion, in assessing whether materials requested by General Star were relevant, the Court stated that it was "unconvinced that General Star need[ed] anything beyond the settlement agreement itself, the terms of the Policy, and the filings and discovery materials from the wrongful conviction action" to prosecute the claims and defenses in this action.  (DN 127, at PageID # 4162-63, 4166.)

General Star argued that depositions of the individual Defendants and corporate representatives of LAGIT and Louisville Metro were relevant to determining actual liability, which is required to "trigger indemnity coverage obligations" under both Kentucky law and the Policy.  (DN 133, at PageID # 4187, 4187-88, 4198-202.)  It emphasized that actual liability of Louisville Metro, Handy, J. Clark, Jones, Ennis, Edelen, Woosley, and Griffiths was not determined in the wrongful conviction action because it settled prior to trial or a ruling on dispositive motions.  (*Id.* at 4187, 4189.)  General Star contended, "Since Kentucky law requires proof of actual liability, and no court has made that determination, fact depositions are critical to uncover what actually happened during the investigation of Clark and Hardin."  (*Id.* at 4190.)  Defendants argued in response that "actual liability" should be based on the record from the underlying litigation and that additional depositions beyond the forty-five depositions taken in the wrongful conviction

9

action would be "unduly burdensome, unreasonably cumulative, harassing, and oppressive."[4]  (DN 137, at PageID # 4541-43.)  Both Parties went to significant lengths in their briefs to convince the Court that binding authority specific to the context of indemnity pursuant to an insurance policy governed the scope of discovery this action.  But having reviewed the cases cited by the Parties, none of them stretched as far as the Parties' proposed or addressed what discovery should be available in a case like this.  Given the absence of provided binding authority, the Court turns to the general principles of discovery set forth in the Federal Rules.

Starting with relevance, given the claims and defenses in this action as set forth above, the facts underlying the wrongful conviction action are undoubtedly relevant to the existence of indemnity coverage.  The cases cited by both Parties support that an indemnity coverage dispute like the instant one turns on some evidence beyond merely the Complaint in the wrongful conviction action.  *See Cincinnati Ins. Co. v. Vance*, 730 S.W.2d 521, 524 (Ky. 1987) ("The essence of our holding is that the coverage question will turn on the true facts as judicially determined and not on the claims of either party, or on the allegations of the complaint against the putative insured."); *Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co.*, 598 F.3d 257, 269 (6th Cir. 2010) ("In order for Hillerich to be entitled to indemnification for the settlement in the first place Hillerich would have been required to show that it could have been held liable in the *Baum* litigation for a covered claim if there had not been a settlement, which includes looking beyond the pleadings to the evidence presented by Baum in its case-in-chief."); *Louisville Galleria, LLC v. Philadelphia Indem. Ins. Co.*, 593 F. Supp. 3d 637, 653 (W.D. Ky. 2022) (quoting in part

---

[4] Defendants made other arguments regarding whether General Star's policy provided coverage for actual or potential liability and whether General Star had waived its right to challenge the existence of actual liability.  (DN 137, at PageID # 4537-40.)  General Star utilized a substantial portion of its reply combatting these arguments.  (DN 138, at PageID # 4567-72.)  The undersigned finds these questions to be too intertwined with the ultimate merits of this coverage dispute and to be better resolved through dispositive motions, nor is resolution of them necessary to answer questions regarding the proper scope of discovery in this matter.  Thus, the undersigned does not address these arguments herein.

*Travelers*, 598 F3d at 269) ("To make this determination, the court must "look[ ] beyond the 'pleadings to the evidence presented' in the McMains Suit."). However, relevance alone is not the test of whether something is discoverable; discovery must also be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). General Star's proportionality arguments focus on "the amount in controversy," citing repeatedly to the fact that at issue is whether General Star must pay "$18 million" in coverage. (DN 133, at PageID # 4181, 4186, 4202; DN 138, at PageID # 4562, 4567.) But that is not the only proportionality factor the Rule prescribes for the Court's consideration. The Court must also consider "the importance of the issues at stake in the action," "the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Here, the Court is particularly mindful of the last factor given the procedural history of the wrongful conviction action in which fact discovery was ongoing for over three-and-a-half years. *Compare* DN 58, *Clark v. Louisville Jefferson County Metro Government*, No. 3:17-cv-419-GNS (filed Aug. 14, 2018) (noting that the Parties conducted their Rule 26(f) planning meeting on August 3, 2018), *with* DN 229, *Clark v. Louisville Jefferson County Metro Government*, No. 3:17-cv-419-GNS (ent'd Dec. 22, 2021) (setting a February 3, 2022, fact discovery deadline). During that time, the Parties took the depositions of forty fact witnesses with several individuals being deposed twice, including the depositions of named-Defendants herein Clark, Hardin, Edelen, Jones, Handy (twice), Woosley, and J. Clark. (DN 137-1, at ¶ 3.) Expert discovery was ongoing after that for an additional eight months. DN 249, *Clark v. Louisville Jefferson County Metro Government*, No. 3:17-cv-419-GNS (filed June 6, 2022). And the parties in the wrongful conviction action proceeded to file dispositive and *Daubert* motions in December 2022, including dipositive motions filed by Defendants Louisville Metro, J.

11

Clark, Woosley, and Handy.  DN 287, *Clark v. Louisville Jefferson County Metro Government*, No. 3:17-cv-419-GNS (filed Dec. 2, 2022); DN 294, *Clark v. Louisville Jefferson County Metro Government*, No. 3:17-cv-419-GNS (filed Dec. 2, 2022); DN 295, *Clark v. Louisville Jefferson County Metro Government*, No. 3:17-cv-419-GNS (filed Dec. 3, 2022).  Those motions were fully briefed and pending before the Court at the time Clark and Hardin settled with Louisville Metro and its law enforcement officers in the fall of 2023.  Thus, while the wrongful conviction case did not go to trial on Clark and Hardin's claims against Louisville Metro, it was fully litigated for the upwards of six years through dispositive motion briefing prior to settlement and its record and the discovery and depositions taken therein provide a significant amount of information relevant to the instant dispute.  And more recently, Clark's remaining claims against Meade County and its law enforcement officers were tried in a four-week jury trial, the record of which is available to the Parties and likely contains significant swaths of relevant information.  Despite General Star's contention otherwise, none of the cases it cited give it carte blanche to redo what the parties in the wrongful conviction action spent so much time and effort doing.  For example, General Star cited *Martin Cnty. Coal Corp. v. Universal Underwriters Ins. Servs., Inc.*, No. CIV.A. 08-93-ART, 2010 WL 4629761, at *6 (E.D. Ky. Nov. 8, 2010), in support of its argument that the depositions it sought were permissible.  (DN 133, at PageID # 4189.)  But the Court finds that case wholly distinguishable.  The cited opinion confronted two questions.  First, the court addressed the question of whether defendant could compel the deposition of the insurance representative who handled the underlying tort case on behalf of plaintiff's insurer to question him regarding the reasonableness of the settlement.  *Martin Cnty.*, 2010 WL 4629761, at *1.  The court found that while the insurance representative had relevant information regarding the reasonableness of the settlement, the court did not have the power to subpoena the representative to testify since he was

12

a citizen of the United Kingdom residing in London, England. *Id.* at *2  Second, the court addressed deficiencies in the preparation of the Rule 30(b)(6) witness produced by Martin County Coal, its former president Dennis Hatfield. *Id.* at *3.  The court allowed a new Rule 30(b)(6) deposition to go forward on certain topics. *Id.* at *7.  But nothing in that opinion addressed whether the discovery sought from either Hill or Maritn County Coal had previously been addressed in the underlying tort action in that case.  Thus, that opinion does not dictate the outcome in this case.

General Star also emphasized that it was not a party to the wrongful conviction action, and thus, it did not have an opportunity to participate in the discovery depositions therein.  This argument also implicates the Court's proportionality analysis. *See* Fed. R. Civ. P. 26(b)(1) (listing "the parties' relative access to relevant information" as one of the factors a court should consider). Setting aside the Parties' arguments about waiver—*see supra* note 4—the Court acknowledges that General Star was not a party to or participant in the wrongful conviction action.  Nonetheless, General Star provided no authority to support that fact alone necessarily mean it gets to retake discovery here if the issue in question was sufficiently addressed in the discovery already taken. General Star's briefing does not identify any specific deficiencies or gaps in the discovery from the wrongful conviction action that it believed it needs to develop.  It instead cited to general concepts on which it believed it needed discovery, writing that "fact depositions [we]re critical to uncover what actually happened during the investigation of Clark and Hardin." (DN 133, at PageID # 4190.)  But that is precisely the issue that the Parties in the wrongful conviction case spent six years litigating.  Without some more specific showing regarding the inadequacy of the existing record, the Court concludes that allowing General Star to redo discovery conducted previously in the wrongful conviction action would be disproportionate to the needs of this case and unreasonably cumulative and/or duplicative. Fed. R. Civ. P. 26(b)(2)(C)(i).  Thus, the Court

13

denies General Star's Motion to Compel (DN 133) as to the depositions of Clark, Hardin, Edelen, Jones, Handy, Woosley, and J. Clark and Rule 30(b)(6) testimony from Louisville Metro regarding Topics 1 and 2 above.  However, it appears Defendants Ennis and Griffiths were never deposed in the wrongful conviction action.  Thus, should General Star wish to proceed with taking their depositions, those depositions would not be disproportionate, unreasonably cumulative, or duplicative.  However, the Court does note that both Clark and Hardin ultimately dismissed their claims against both Ennis and Griffiths prior to dispositive motions even being filed in the wrongful conviction action.  DN 266, *Clark v. Louisville Jefferson County Metro Government*, No. 3:17-cv-419-GNS (filed Nov. 2, 2022); DN 275, *Clark v. Louisville Jefferson County Metro Government*, No. 3:17-cv-419-GNS (filed Nov. 16, 2022).  The Court expects that fact to be taken into account by General Star when it determines whether or not to schedule those depositions.

As to the requested Rule 30(b)(6) deposition of a LAGIT representative on Topics 1 and 2 above, the Court also finds it disproportionate.  LAGIT was not a party to the wrongful conviction action and any information it gleaned regarding Topics 1 and 2, it necessarily did second hand.  General Star provided no sufficient rationale to justify forcing LAGIT to summarize for it the information that LAGIT gathered regarding the wrongful conviction action.  General Star has been provided the same discovery materials and can discern that information for itself.

Thus, the Court grants the Motion to Compel (DN 133) as to the depositions of Ennis and Griffiths and denies it as to the depositions of the remaining individual Defendants and testimony from Rule 30(b)(6) representative(s) of LAGIT and Louisville Metro regarding Topic Nos. 1-2.

### 2.    Rule 30(b)(6) Topic Nos. 3-9

Next, General Star moved to compel LAGIT and Louisville Metro to designate a representative(s) to testify about:

14

**TOPIC NO. 3:** The terms and conditions of the LAGIT 1998-99 Contract.

**TOPIC NO. 4:** The terms and conditions of the LAGIT 1999-00 Contract.

**TOPIC NO. 5:** The terms and conditions of any other potentially applicable policies or contracts issued by LAGIT to the City or Metro for the fiscal and/or coverage periods of July 1, 1991 through July 1, 2020.

**TOPIC NO. 6:** Coverage for the [wrongful conviction a]ction under the LAGIT 1998-99 Contract.

**TOPIC NO. 7:** Coverage for the [wrongful conviction a]ction under the LAGIT 1999-00 Contract.

**TOPIC NO. 8:** Coverage for the [wrongful conviction a]ction under the LAGIT 2017-18 Contract.

**TOPIC NO. 9:** Coverage for the [wrongful conviction a]ction under any other potentially applicable policies or contracts issued by LAGIT to the City or Metro for the fiscal and/or coverage periods of July 1, 1991 through July 1, 2020.

(DN 133, at PageID # 4192-94; DN 133-2, at PageID # 4209-10; DN 133-3, at PageID # 4215-16; DN 133-4, at PageID # 4221; DN 133-5, at PageID # 4227.)  LAGIT and Louisville Metro objected to Topic Nos. 3-5 on grounds that the policies speak for themselves and that both had "no relevant, nonprivileged information to provide via deposition testimony."  (DN 133-2, at PageID # 4209; DN 133-3, at PageID # 4215.)  Louisville Metro objected to Topic Nos. 6-9 on the same grounds. (DN 133-3, at PageID # 4215-16.)  LAGIT also included those same objections in its response to Topic No. 6 but then added that its legal position regarding coverage was set forth in its dispositive motion and summarized that position.  (DN 133-2, at PageID # 4209-10.)  LAGIT incorporated its response to Topic No. 6 as to Topic Nos. 7-9.  (*Id.*)

General Star contended that the interpretation and application of the relevant policies by both Louisville Metro and LAGIT are relevant and discoverable.  (DN 133, at PageID # 4193.)  It also argued that LAGIT's position about coverage has shifted, citing the fact that LAGIT's counterclaim referenced the applicability of one set of contracts but LAGIT seemingly changed its

15

mind in its summary judgment filing. (*Id.*) In response, Louisville Metro and LAGIT argued that testimony about the legal construction of the terms of the contracts was not a proper subject for a Rule 30(b)(6) deposition. (DN 137, at PageID # 4544-47.)

Here, the Court agrees that most of these topics are largely improper. First, to the extent the topics seek to have a lay witness testify as to legal conclusions, "such questions exceed the permissible scope of a 30(b)(6) deposition." *Brooks v. Caterpillar Glob. Mining Am., LLC*, No. 4:14cv-00022-JHM, 2016 WL 5213936, at *5 (W.D. Ky. Sep. 20, 2016) (citing *Cardinal Aluminum Co. v. Cont'l Cas. Co.*, No. 3:14-CV-857-TBR-LLK, 2015 WL 4068405, at *4 (W.D. Ky. July 1, 2015)). It is difficult to conceive of what question General Star could ask purely regarding the terms of the insurance policies and contracts that would not call for a legal conclusion in response. Questions about the existence of coverage posed to Louisville Metro, the "insured" under the LAGIT contracts, would be equally objectionable on those grounds. However, Topic Nos. 6-9 (LAGIT) regarding coverage merit deeper inquiry. To some degree, the answer is the same as with the prior topics because a question about the existence of coverage could be nothing more than a disguised attempt to ask a lay witness a question of law that should otherwise be decided by the Court, e.g. the very declaration regarding coverage the Parties have asked for here in their Complaint and Counterclaim. But given General Star's assertion that LAGIT's position about which contract provides coverage has changed and/or been inconsistent over time, it is permissible for General Star to question a representative of LAGIT as to LAGIT's position about whether a particular contract and/or provision therein provides coverage for the wrongful conviction action. As the Court previously observed in ruling on a prior dispute: while "General Star and LAGIT have a disagreement about whether and, if so, how the terms of LAGIT's coverage contracts play into the existence of coverage under the Policy, that General Star [has] considered

16

the terms of those contracts to have a role to play is evident in reading its Complaint and Answer to LAGIT's counterclaim.  Whether General Star is correct about that position is not for the Court to determine in ruling on a motion to compel discovery."  (DN 127, at PageID # 4157-58.)  Further, the fact that LAGIT attempted in its objections to General Star's Rule 30(b)(6) notice to provide a narrative response on this point does not relieve it of the burden of producing Rule 30(b)(6) testimony.  *See Wolverine World Wide, Inc. v. Am. Ins. Co.*, No. 1:19-CV-00010, 2022 WL 21835655, at *8 (W.D. Mich. Sept. 26, 2022) ("[N]othing in the Federal Rules of Civil Procedure gives a party the right to not respond or to inadequately respond to a Rule 30(b)(6) deposition notice or subpoena request and elect to supply the answers in a written response to an interrogatory.").  On balance, the Court will grant General Star's Motion to Compel (DN 133) in part, require LAGIT to produce a witness to testify regarding Topic Nos. 6-9 (LAGIT) consistent with the parameters set forth herein, and deny the Motion to Compel (DN 133) as to Rule 30(b)(6) Topic Nos. 3-9 in all other respects.

      **3.**      **Rule 30(b)(6) Topic Nos. 10-11 (LAGIT) and Nos. 10-13 (Louisville Metro)**

General Star also moved to compel LAGIT and Louisville Metro to designate a representative(s) to testify about:

> **TOPIC NO. 10:** Communications between LAGIT and General Star relating to the [wrongful conviction a]ction.

> **TOPIC NO. 11 (LAGIT):** Communications between LAGIT and any insurer other than General Star relating to the [wrongful conviction a]ction.

> **TOPIC NO. 11 (Louisville Metro):** Communications between Metro and General Star relating to the [wrongful conviction a]ction.

> **TOPIC NO. 12 (Louisville Metro):** Metro's communications with LAGIT relating to the [wrongful conviction a]ction.

17

**TOPIC NO. 13 (Louisville Metro):** Metro's communications with any other insurer relating to the [wrongful conviction a]ction.

(DN 133, at PageID # 4194-96; DN 133-2, at PageID # 4211; DN 133-3, at PageID # 4216-17; DN 133-4, at PageID # 4221-22; DN 133-5, at PageID # 4227-28.)  LAGIT and Louisville Metro responded to these topics by generally stating the communications between the specified entities regarding the wrongful conviction action "ha[d] been produced and speak for themselves" such that there was "no relevant information to provide via deposition testimony."  (DN 133-2, at PageID # 4211; DN 133-3, at PageID # 4216-17.)  As to Topic No. 12 (Louisville Metro), Louisville Metro emphasized that "[n]onprivileged communications between Metro and LAGIT relating to the [wrongful conviction a]ction ha[d] been produced and speak for themselves."  (DN 133-3, at PageID # 4216.)

General Star argued that these topics would "assess whether coverage is proper under the General Star policy and whether own LAGIT's [*sic*] shifting positions in this litigation are consistent with the facts and policy terms."  (DN 133, at PageID # 4195.)  It emphasized that "[t]he existence of written communications d[id] not eliminate the need for deposition testimony, which [wa]s essential to clarify the intent, context and implication of [*sic*] behind LAGIT's shift from its 1998-99 and 1999-00 policies to the 2017-18."  (*Id.*)  It argued that the testimony it sought would "clarify[] how LAGIT and Metro understood and applied these coverage positions."  (*Id.* at 4196.)  In response, Defendants point out that any communications with General Star are equally available to it and reassert their objection that because written communications have already been produced, "these topics are irrelevant and unreasonably cumulative."  (DN 137, at PageID # 4547.)

The Court finds Defendants' objections without merit.  The production of documents does not automatically preclude deposition testimony about those documents.  Such testimony could be unreasonably cumulative depending on the questions asked or such testimony could, as General

Star proffers, provide context beyond that of the written communications. As to the relevance of testimony about the requested communications, as set forth above and as the Court previously observed in ruling on a prior dispute: while "General Star and LAGIT have a disagreement about whether and, if so, how the terms of LAGIT's coverage contracts play into the existence of coverage under the Policy, that General Star [has] considered the terms of those contracts to have a role to play is evident in reading its Complaint and Answer to LAGIT's counterclaim. Whether General Star is correct about that position is not for the Court to determine in ruling on a motion to compel discovery." (DN 127, at PageID # 4157-58.) And thus to the extent that General Star is seeking testimony about communications that relate to the application of LAGIT's coverage contracts, the testimony they seek is relevant and discoverable. The Court will grant General Star's Motion to Compel (DN 133) as to Rule 30(b)(6) Topic Nos. 10-11 (LAGIT) and Nos. 10-13 (Louisville Metro).

### 4.   Rule 30(b)(6) Topic Nos. 12-13 (LAGIT) and No. 14 (Louisville Metro)

General Star also moved to compel LAGIT and Louisville Metro to designate a representative(s) to testify about:

**TOPIC NO. 12 (LAGIT):** The terms and conditions of the General Star Policy.

**TOPIC NO. 13 (LAGIT):** LAGIT's claim for coverage for the [wrongful conviction a]ction under the General Star Policy.

**TOPIC NO. 14 (Louisville Metro):** Metro's knowledge of, and participation in, LAGIT's claim for coverage for the [wrongful conviction a]ction under the General Star Policy.

(DN 133, at PageID # 4194-96; DN 133-2, at PageID # 4211; DN 133-3, at PageID # 4217; DN 133-4, at PageID # 4222; DN 133-5, at PageID # 4228.) LAGIT objected to Topic No. 12 (LAGIT) on grounds that the Policy speaks for itself. (DN 133-2, at PageID # 4209, 4211.) As to Topic

19

No. 13 (LAGIT), LAGIT objected that coverage was an issue of law not properly within the scope of Rule 30(b)(6) deposition testimony, stated that its legal position regarding coverage was set forth in its dispositive motion, and summarized that position. (*Id.* at 4209-11.) Louisville Metro objected to Topic No. 14 (Louisville Metro) as vague, ambiguous, and irrelevant. (DN 133-3, at PageID # 4217.)

While slightly unclear because General Star lumped these topics in with the others discussed in Section II(B)(3) *supra* and II(B)(5) *infra*, General Star argued that these topics properly sought testimony that would "assess whether coverage is proper under the General Star Policy" and that the topics "involve facts alleged in the [P]arties' pleadings." (DN 133, at PageID # 4195.) The Court finds these arguments unpersuasive.

As to Topic No. 12 (LAGIT), the Court invokes the reasoning set forth in Section II(B)(2) *supra*. It is difficult to conceive of what question General Star could ask purely regarding the terms of its own Policy that would not call for a legal conclusion in response. The Court will deny the Motion to Compel (DN 133) as to Topic No. 12 (LAGIT).

As to Topic No. 13 (LAGIT), while the Court found above that testimony from LAGIT about coverage under its own contracts was appropriate in some respects, a generic request that LAGIT prepare a representative to discuss its own claim for coverage under General Star's Policy appears to the Court to be too non-specific to allow LAGIT to fairly prepare a representative. It is the equivalent of asking LAGIT to prepare a representative to discuss "any and every issue related to LAGIT's Counterclaim," which is much too broad and contrary to the purpose of sending Rule 30(b)(6) topics to the deponent in the first place. The topic would also seem to naturally encompass improper questions regarding LAGIT's litigation strategy as it is not limited to the factual basis

20

for LAGIT's claim in the way some of the other topics are. The Court will deny the Motion to Compel (DN 133) as to Topic No. 12 (LAGIT).

As to Topic No. 14 (Louisville Metro), the Court sustains Louisville Metro's relevance objection. As General Star's Policy was issued to LAGIT (DN 1, at ¶ 1), the Court does not understand and General Star's Motion to Compel (DN 133) did not establish how what Louisville Metro knew of or did regarding LAGIT's claim for coverage under the Policy implicates any of the declarations sought in General Star's Complaint or any of the Policy provisions cited therein. Nor does the Court understand how the same has any bearing on LAGIT's counterclaim. In the absence of such an explanation, the Court finds Topic No. 14 (Louisville Metro) irrelevant and will deny the Motion To Compel (DN 133) as to it.

### 5. Rule 30(b)(6) Topic Nos. 14-17 (LAGIT) and No. 15 (Louisville Metro)

General Star also moved to compel LAGIT to designate a representative(s) to testify about:

**TOPIC NO. 14 (LAGIT):** The factual basis for the allegations in LAGIT's Counterclaim in this action.

**TOPIC NO. 15 (LAGIT):** The factual basis for LAGIT's affirmative defenses to General Star's Complaint in this action.

**TOPIC NO. 16 (LAGIT):** The factual basis for LAGIT's contention that the General Star Policy is like a reinsurance contract.

**TOPIC NO. 17 (LAGIT):** The factual basis for LAGIT's contention that General Star's Policy supports Vertical Exhaustion (as opposed to Horizonal Exhaustion).

**TOPIC NO. 15 (Louisville Metro):** The factual basis for Metro's affirmative defenses to General Star's Complaint in this action.

(DN 133, at PageID# 4194-96; DN 133-2, at PageID # 4211-12; DN 133-3, at PageID # 4217; DN 133-4, at 4222; DN 133-5, at PageID # 4228.) LAGIT objected on grounds that the factual bases for its affirmative defenses were set forth in its dispositive motion and that it had no additional

21

relevant and/or nonprivileged information to provide via deposition testimony. (DN 133-2, at PageID # 4211-12.) Louisville Metro objected on the same grounds, also citing LAGIT's dispositive motion. (DN 133-3, at PageID # 4217.) General Star argued that these topics "involve[d] facts alleged in the [P]arties' pleadings" such that they were proper. (DN 133, at PageID # 4195.) LAGIT and Louisville Metro argued that though these topics did seek relevant information, they were unduly burdensome and unreasonably cumulative.[5] (DN 137, at PageID # 4548.) The Court disagrees. These topics are generally within the scope of permissible Rule 30(b)(6) testimony. *See, e.g.*, *Woods v. Standard Fire Ins. Co.*, 589 F. Supp. 3d 675, 685 (E.D. Ky. 2022) (quoting *Erickson v. City of Lakewood*, No. 1:19-cv-2613, 2021 WL 4947231, at * 5 (D. Colo. Sept. 23, 2021)) ("[C]ontention interrogatories seeking the factual bases for allegations would not encroach on protected information, [and] it is not apparent how the same information would be otherwise unavailable through questions posed to a deponent in the course of a deposition."). The Court is unconvinced that the fact that LAGIT has already moved for summary judgment conclusively answers the questions General Star would pose, particularly here given the fact that General Star moved for an extension of time to respond to that summary judgment motion pursuant to Fed. R. Civ. P. 56(d), and the Court granted that motion. (DNs 119, 126.) The Motion to Compel (DN 133) will be granted as to Rule 30(b)(6) Topic Nos. 14-17 (LAGIT) and No. 15 (Louisville Metro).

---

[5] LAGIT and Louisville Metro also argued that questions regarding reinsurance and vertical exhaustion were ones of law, citing LAGIT's summary judgment motion. (DN 137, at PageID # 4548-49.) The undersigned again declines the Parties' invitation to wade into the merits of the dispute in this matter in ruling on a motion to compel. The topics expressly ask for the "factual basis" for the claims. If there are no such bases because the issues are purely legal, any preparation regarding this topic and any questioning will be minimal if not nonexistent.

### 6.      Rule 30(b)(6) Topic No. 18 (LAGIT) and No. 16 (Louisville Metro)

Finally, General Star moved to compel LAGIT and Louisville Metro to designate a representative(s) to testify about:

> **TOPIC NO. 16 (to Louisville Metro):** Metro's responses to General Star's discovery requests in this action, including its search for and production of documents responsive to document requests propounded by General Star.

> **TOPIC NO. 18 (to LAGIT):** LAGIT's responses to General Star's discovery requests in this action, including its search for and production of documents responsive to document requests propounded by General Star.

(DN 133, at PageID # 4196-97; DN 133-2, at PageID # 4212; DN 133-3, at PageID # 4217; DN 133-4, at PageID # 4222; DN 133-5, at PageID # 4228.)  LAGIT and Louisville Metro objected to these topics on grounds that they were overly broad, unduly burdensome, and beyond the scope of discovery.  (DN 133-2, at PageID # 4208-09, 4212; DN 133-3, at PageID # 4214-15, 4217.)  General Star argued that testimony about "document collection and retention practices" is generally permissible and relevant.  (DN 133, at PageID # 4196.)  It argued that such testimony was necessary because LAGIT and Metro did not produce any written communications between them about coverage and withheld internal communications on grounds of privilege despite the fact that the reports have been otherwise publicly filed in the record.  (*Id.* at 4197.)  In response, LAGIT and Louisville Metro argued that General Star had "offered nothing but pure speculation that any responsive documents are missing."  (DN 137, at PageID # 4549.)  In its reply, General Star argued that "not a single written communication between LAGIT and Metro concerning coverage for the *Clark/Hardin* action ha[d] been produced.  (DN 138, at PageID # 4575.)

> As the United States District Court for the Eastern District of Michigan explained

> Courts have ordered "discovery about discovery" when the record suggests that there is reason to distrust the responding party's diligence. *See, e.g.*, *Ruiz-Bueno v. Scott*, No. 2:12-CV-0809, 2013 WL 6055402, at *3 (S.D. Ohio Nov. 15, 2013). "In general, such discovery will be allowed if a party's efforts to comply with proper

23

discovery requests are reasonably drawn into question." *Crocs, Inc. v. Effervescent, Inc.*, No. 06-CV-00605-PAB-KMT, 2017 WL 1325344, at \*8 (D. Colo. Jan. 3, 2017), *objections overruled*, 2017 WL 1325171 (D. Colo. Feb. 24, 2017). "When a party responding to discovery takes the position that it has fully responded, the court usually will not compel a further response absent evidence that the responding party has improperly withheld documents." *Conagra Foods Food Ingredients Co. v. Archer Daniels Midland Co.*, No. 12-2171-EFM, 2014 WL 1570263, at \*6 (D. Kan. Apr. 18, 2014).

*Edwards v. Scripps Media, Inc.*, 331 F.R.D. 116, 125 (E.D. Mich. 2019). The Court finds the Parties' briefing wholly insufficient to address these issues. General Star's briefing emphasized that no communications between LAGIT and Metro were produced while admitting that some communications were listed on a supplemental privilege log. (DN 133, at PageID # 4197.) While General Star cited one example of a communication marked privileged that had been publicly disclosed, it did not provide any more fulsome argument to support its implied greater challenge to the propriety of the privilege designations. Further, the topics above are not limited to communications and request testimony regarding LAGIT and Louisville Metro's discovery efforts writ large. General Star did not produce sufficient reason to distrust LAGIT and Louisville Metro's diligence in responding to all discovery in the collective two pages General Star spent addressing these issues in its motion and reply. (DN 133, at PageID # 4196-97; DN 138, at PageID # 4575.) General Star's Motion to Compel (DN 133) will be denied as to Topic No. 18 (LAGIT) and No. 16 (Louisville Metro).

### C.    Next Steps

The Court notes that LAGIT's Motion for Summary Judgment (DN 108) remains pending before the Court. In light of the Court's grant of General Star's Rule 56(d) motion (DN 126) and the fact that discovery between the Parties remains ongoing, the Court will procedurally deny that motion without prejudice and direct LAGIT to refile that motion at the conclusion of the discovery period set forth below.

24

### III.    CONCLUSION AND ORDER

For the reasons set forth above, IT IS HEREBY ORDERED as follows:

(1)    General Star's Motion to Compel (DN 133) is **GRANTED IN PART** and **DENIED IN PART**:

    (a)    The motion is **GRANTED** as to the requested depositions of Defendants Ennis and Griffiths.

    (b)    The motion is also **GRANTED** as to the Rule 30(b)(6) depositions of representatives of LAGIT and Louisville Metro for Topic Nos. 6-9, 10-11, 14-17 to LAGIT and Topic Nos. 10-13, and 15 to Louisville Metro as set forth above.

    (c)    The motion is **DENIED** in all other respects as set forth herein.

(2)    LAGIT's Motion for Summary Judgment (DN 108) is procedurally **DENIED WITHOUT PREJUDICE**.

(3)    The Parties shall complete all discovery, including that permitted herein, on or before **July 24, 2026**.

(4)    The Parties shall file and/or refile all *Daubert* and dispositive motions no earlier than **September 8, 2026**.

Colin H Lindsay, Magistrate Judge
United States District Court

cc:  Counsel of record

June 10, 2026

25